IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:18-cv-2429-RPM-KLM

FIRST MERCURY INSURANCE COMPANY,

  Plaintiff,

v.

BRIDGE DIAGNOSTICS, INC., a Colorado corporation,

  Defendant.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

  Plaintiff, First Mercury Insurance Company ("Plaintiff" or "First Mercury"), by and through its attorneys, Treece Alfrey Musat P.C. and Kennedys CMK LLP, submits its Response in Opposition to Defendant, Bridge Diagnostic, Inc.'s ("Defendant" or "BDI"), Motion to Dismiss. For the following reasons, Defendant's Motion to Dismiss must be denied.

# TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION**………………………………………………………………  1

II.   **BACKGROUND**………………………………………………………………  2

III.  **ARGUMENT**……………………………………………………………..  6

     A.    **The Underlying Claimants Are Not "Necessary" Parties Under Rule 19** .........................................................................................  6

          1.    **If the Court concludes that the underlying claimants are necessary, the Court should not dismiss this action, but should join the underlying claimants** ..................................  10

          2.    **Requiring First Mercury to name all of the underlying claimants, known and unknown, in this Action would be inefficient and disruptive to this litigation** .................................  11

     B.    **Defendant's Second Basis For Dismissal Is Meritless**.........................  12

          1.    **This Court should exercise its discretion to hear this action**…  12

          2.    **The issues in this Declaratory Judgment Action are "independent of and separable from" the issues in the Underlying Action** ........................................................................  15

IV.  **CONCLUSION**………………………………………………………………...  17

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*ACand S, Inc. v. Aetna Cas. and Surety Co.*,
   666 F.2d 819 (3d. Cir. 1981)..................................................................... 13

*Addison Ins. Co. v. Rippy*,
   2009 WL 723322 (D. Colo. March 18, 2009).......................................... 14

*Amco Ins. Co. v. Chin*,
   2010 WL 11597422 (C.D. Cal. March 15, 2010) .................................... 16

*Black Diamond Girl Scout Council, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   621 F. Supp. 96, 97-98 (S.D. W. Va. 1985).............................................. 8

*Bd. of Cnty Comm'rs of Boulder v. Rocky Mtn. Christian Church*,
   481 F. Supp. 2d 1181 (D. Colo. 2007  ............................................... 14, 15

*Colard v. American Family Mut. Ins. Co.*,
   709 P.2d 11 (Colo. App. 1985)................................................................. 9

*Constitution Associates v. New Hampshire Ins. Co.*,
   930 P.2d (Colo. 1996)............................................................................ 15

*Cont'l Cas. Co. v. Coastal Savings Bank*,
   977 F.2d 734 (2d Cir. 1992)............................................................... 12, 13

*Coregis Ins. Co. v. Wheeler*,
   180 F.R.D. 280 (E.D. Pa. 1998)........................................................... 9, 10

*Farmers Alliance Mut. Ins. Co. v. Jones*,
   570 F.2d 1384 (10th Cir. 1978) ......................................................... 12, 13

*Francis Oil & Gas, Inc. v. Exxon Corp.*,
   661 F.2d 873 (10th Cir. 1981) ............................................................... 11

*Horace Mann Ins. Co. v. Johnson By and Through Johnson*,
   953 F.2d 575 (10th Cir. 1991) ............................................................... 13

*Northland Ins. Co. v. Bashor*,
   494 P.2d 1292 (Colo. 1972)..................................................................... 9

iii

*Nunn v. Mid-Century Ins. Co.*,
    244 P.3d 116 (Colo. 2010) ............................................................................. 9

*Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*,
    94 F.3d 1407 (10th Cir. 1996) ................................................................. 7, 11

*St. Paul Fire and Marine Ins. Co. v. Runyan*,
    53 F.3d 1167 (10th Cir. 1995) ................................................................. 13, 14

*State Farm Fire & Cas. Co. v. Mhoon*,
    31 F.3d 979 (10th Cir. 1994) ................................................................... 13, 15

*Steen v. Aetna Cas. & Sur. Co.*,
    401 P.2d 254 (Colo. 1965) ............................................................................ 9

*United Fin. Cas. Co. v. Lapp*,
    2012 WL 7800838 (D. Colo. Oct. 12, 2012) .............................................. 10

*United States v. City of Las Cruces*,
    289 F.3d 1170 (10th Cir. 2002) ............................................................... 13, 14

*Western Cas. and Surety Co. v. Teel*,
    391 F.2d 764 .............................................................................................. 12

<u>Statutes</u>

Declaratory Judgment Act, 28 U.S.C. § 2201 ........................................................ 6

Federal Venue Statute, 28 U.S.C. § 1391 ........................................................... 15

Federal Rules of Civil Procedure, Rule 12(b)(1) ................................................. 10

Federal Rules of Civil Procedure, Rule 12(b)(6) ............................................... 1, 6

Federal Rules of Civil Procedure, Rule 12(b)(7) ............................................... 1, 6

Federal Rules of Civil Procedure, Rule 19 ................................................. *passim*

Florida Statutes, 95.11(3)(a) ............................................................................. 11

## I.    <u>INTRODUCTION</u>

This declaratory judgment action stems from a pedestrian bridge collapse that took place on March 15, 2018 in Miami, Florida. First Mercury seeks a declaration that it has no duty to indemnify BDI for any claims seeking damages as a result of the bridge collapse and, despite BDI's protestations otherwise, First Mercury's action is not anticipatory and is proper. Indeed, the coverage issues here will not require BDI to concede liability in the underlying lawsuits in order to secure coverage from First Mercury. Rather, independent of whether BDI acted negligently or otherwise, the professional liability exclusion contained in the First Mercury policies plainly applies to the activities and services performed by BDI.

BDI's first purported basis for dismissal, although asserted under 12(b)(6), is actually a request for dismissal under 12(b)(7) for failure to join a party in accordance with Rule 19. As set forth more fully below, BDI has failed to meet its burden for establishing grounds for dismissal under 12(b)(7). In order for a court to dismiss an action under Rule 19, it must determine that the absent parties are necessary, cannot be joined, and are indispensable. BDI does not analyze these requirements. It simply cites, in a conclusory fashion, that failure to join the underlying claimants in this case is grounds for dismissal.

In this action, the Court is asked to decide the obligation of two contracting parties, First Mercury and BDI. The Court's determination in this case will provide complete relief between those two parties. Thus, the claimants are not necessary. The only interest that such individuals have in this case is based on a hypothetical scenario whereby they may obtain an uncollectible judgment against BDI, or an assignment of BDI's rights under the First Mercury policy from BDI,

which they may then seek to enforce against First Mercury.  Such an inchoate financial interest is not sufficient to make the claimants necessary under Rule 19.

Additionally, the statute of limitations for personal injury actions in Florida is four years, meaning that a potential claimant has until March 15, 2022 to commence an action for any alleged injuries sustained as a result of the bridge collapse.  Requiring First Mercury to name each of the underlying claimants in this Action would result in an unknown number of amendments to the Complaint that would not only be inefficient but also disruptive to this litigation, which solely involves a contract dispute between First Mercury and BDI.

BDI's second basis for its motion to dismiss is also meritless.  A resolution of the coverage issues before this Court does not depend upon the factual determinations that may be made in the underlying state court case, nor would a judgment in the state court case affect the coverage issues in this Court.  Indeed, First Mercury is not a party in the underlying tort case, nor have the coverage issues been brought or litigated in the state court case.

Accordingly, BDI's Motion to Dismiss must be denied.

## II.  **BACKGROUND**

As a result of the bridge collapse on March 15, 2018, numerous lawsuits were filed against BDI and other defendants in the Circuit Court for Miami-Dade County (the "Underlying Lawsuits").

By Order dated July 6, 2018, the Circuit Court consolidated the Underlying Lawsuits, for pre-trial and discovery purposes. Consistent with that Order, a Master Complaint styled *Marquise Hepburn v. Munilla Construction Management, LLC, Bridge Diagnostics, Inc., et al.*, was filed on July 20, 2018 under Case No. 2018-008144-CA-03 (the "Hepburn Master Complaint"). The

Hepburn Master Complaint is to act as the Anchor Case for all of the Underlying Lawsuits. The July 6, 2018 Order also stated that all pleadings shall be filed in the Anchor Case and the plaintiffs in the Underlying Lawsuits were directed to file a Master Civilian Complaint and Master Worker Complaint (concerning the claims of workers on the bridge) that will serve as amendments as of right.  The Master Civilian Complaint and the Master Worker Complaint (collectively, the "Master Complaints") were filed in the Anchor Case on October 10, 2018.

The Master Civilian Complaint asserts claims against BDI for negligence, professional negligence, negligent misrepresentation, and negligent failure to disclose.  *See* Master Civilian Complaint [Doc. 9-7] at 60-65.  The Master Worker Complaint asserts claims against BDI for gross negligence, professional gross negligence, negligent failure to ensure safety by failing to disclose certain information, and negligent misrepresentation.  *See* Master Worker Complaint [Doc. 9-8] at 107-116.  Specifically, the claimants assert that BDI: 1) was negligent in the performance of its work on the bridge; 2) did not meet its professional duties of care with regard to its work; 3) failed to disclose certain information; and 4) misrepresented that the bridge was safe.  In addition, the claimants in the Master Complaints have reserved their rights to seek punitive damages from BDI pursuant to Florida law.

First Mercury issued Commercial General Liability to BDI, policy number CA-CGL-00000052945-03, for the policy period of April 1, 2017 through April 1, 2018 (the "CGL Policy").  First Mercury also issued a Commercial Excess Liability policy to BDI, under policy number NJ-EX-0000072392-01, in effect for the policy period April 1, 2017 through April 1, 2018 (the "Excess Policy") (collectively, the "Policies").  The CGL Policy, to which the Excess Policy follows form, contains a Professional Services Exclusion, which states in relevant part:

This insurance does not apply to:

Professional Services

"Bodily injury," "property damage" or "personal and advertising injury" arising out of or resulting from the rendering or failure to render any "professional service" by any Insured; or any act, error, omission, defect or deficiency in any test performed, or any evaluation, consultation, opinion, advice, designs, maps, surveys, reports, specifications given by or on behalf of any Insured; or the reporting of or reliance upon any such test performed.

"Professional service" includes but is not limited to:

                                    ***

(2)    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by an architect, engineer or surveyor performing services on a project;

(3)    Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project;

(4)    Engineering services, including related supervisory or inspection services;

*See* CGL Policy [Doc. 9-2], at 49 of 65. The CGL Policy also contains a Punitive or Exemplary Damages Exclusion. *Id.* at 48 of 65.

BDI is also insured with respect to the Underlying Lawsuits under a professional liability insurance policy issued by Brit UW Ltd., Syndicate 2987 ("Brit").  First Mercury believes that sometime between August 2018 and November 2018, Brit tendered its policy limits to the plaintiffs in the Florida litigation in an attempt to settle the claims asserted against BDI in the Underlying Lawsuits.

On September 13, 2018, First Mercury offered to participate in the defense of BDI with respect to the allegations asserted in the initial Hepburn Master Complaint, subject to a

comprehensive reservation of rights to disclaim coverage, withdraw its defense, and seek reimbursement from BDI if it was determined that the Professional Services Exclusion in the Policies applied to preclude coverage for all claims asserted against BDI. *See* Reservation of Rights Letter [Doc. 9-6]. First Mercury also disclaimed coverage based on the Punitive or Exemplary Damages Exclusion for all punitive or exemplary damages that may be awarded against BDI. *Id.*

With respect the bridge project, BDI was a subcontractor of Barnhart Crane and Rigging, the company responsible for placing the pre-constructed bridge in place over the roadway.[1] As alleged in the Master Complaints, BDI was responsible for providing "structural monitoring" services and was responsible for inspecting the structural integrity of the bridge, as well as supervising the movement plans submitted by Barnhart Crane. BDI initially sent its engineers to the site to install and test the monitoring equipment, and two engineers returned to conduct the actual monitoring on March 10, 2018, when the bridge was moved into place over the roadway. BDI's engineers were then tasked with drafting a report regarding their monitoring services, and were in the process of writing that report when the bridge collapsed. BDI's work on the project was of a professional nature (i.e. engineering services consisting of structural monitoring of the bridge and drafting a report regarding the same), which falls under the above-referenced Professional Services Exclusion. *See* First Amended Complaint, Doc. 9, ¶¶ 20-28.

---

[1] The bridge was built using Accelerated Bridge Construction methods, whereby the main span of the pedestrian bridge, which consists of a 175-foot pre-stressed concrete, was constructed first and then lifted into its permanent place over the roadway. *See* First Amended Complaint, Doc. 9, ¶ 17.

Accordingly, on or about September 24, 2018, First Mercury brought this Coverage Action against BDI seeking a declaration pursuant to 28 U.S.C. § 2201.  In this Action, First Mercury seeks a declaration that it has no obligation to indemnify BDI in connection with the Underlying Action[2] because the claims therein are barred by the Professional Services Exclusion in the Policies.  First Mercury also seeks a declaration that it has no obligation to indemnify BDI for any punitive or exemplary damages that are awarded against BDI based on the Punitive or Exemplary Damages exclusion.  Finally, First Mercury seeks a declaration that, because it has no duty to indemnify BDI in connection with the Underlying Action, it has no duty to defend BDI and is, therefore, entitled to reimbursement of defense costs it has incurred to date.  *See* First Amended Complaint, Doc. 9, ¶¶ 46-60.

### III.   ARGUMENT

### A.   The Underlying Claimants Are Not "Necessary" Parties Under Rule 19.

BDI bases its Motion to Dismiss on Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  However, BDI's first stated grounds for dismissal is that this case should be dismissed because First Mercury failed to join the underlying claimants as parties.  Accordingly, BDI's first basis for dismissal, although asserted under 12(b)(6), is actually a request for dismissal under 12(b)(7) for failure to join a party in accordance with Rule 19.  BDI's motion does not contain a substantive analysis of the Rule 19 requirements. Instead, BDI simply asserts, in conclusory terms, that this Action should be dismissed for failing to join the underlying claimants.

---

[2] The Underlying Action means the Underlying Lawsuits, the Master Complaints, and or any subsequent pleadings that may be filed by the claimants to conform to or adopt the allegations set forth in the Master Complaints.

6

BDI's first ground for dismissal should be denied as being brought under the wrong provision of Rule 12(b). Even if the Court does not deny solely on this basis, an analysis of the Rule 19 requirements demonstrates that BDI has no support for its first stated basis for dismissal.

In making its determination under Rule 19, the Court is first required to determine whether the proposed parties are "necessary" pursuant to Rule 19(a). *See Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996). If the party is not "necessary," then the party is not required to be joined and the Court's inquiry under Rule 19 is therefore concluded and the motion must be denied. However, if the Court finds that the proposed party is "necessary," it must engage in further analysis. *Id.*

If a party is "necessary," the Court must then join the party if it is feasible to do so. *Id.* If it is not feasible, due to jurisdictional or other considerations, the Court must then determine whether the party is "indispensable" pursuant to Rule 19(b). *Id.* If the party is not indispensable, the action may proceed. *Id.* However, if, and only if the party is "necessary," cannot be joined, and is "indispensable," may the Court dismiss the action. *Id.*

Furthermore, the moving party, here BDI, has the burden to demonstrate that the case should be dismissed for failing to join a required party. *Id.* Not only did BDI fail to carry its burden, but when applying the foregoing standards to the facts of this case, it is apparent that the underlying claimants are not "necessary" and BDI's motion on this basis should be denied.

Rule 19(a) provides as follows:

**Persons Required to Be Joined if Feasible.**

 (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among the existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

  (i)   as a practical matter impair or impede the person's ability to protect the interest; or

  (ii)  leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligation because of the interest.

(2)  *Joinder by Court Order*. If a person has not been joined as required, the court must order that person be made a party.  A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3)  *Venue*.  If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

In this instance, complete relief can be afforded in the absence of the underlying claimants because this Action seeks a declaration of rights and duties under an insurance contract between BDI and First Mercury, and the underlying claimants are not parties to that contract. *See Black Diamond Girl Scout Council, Inc. v. St. Paul Fire & Marine Ins. Co.*, 621 F. Supp. 96, 97-98 (S.D. W. Va. 1985) (finding parties to tort action against insured were not required to be joined since they were not parties to the insurance contract and complete relief could be afforded in their absence).  First Mercury seeks a declaration that it has no duty to indemnify and, therefore, no duty to defend BDI under the terms of the Policies.  Those determinations can be made without joining the claimants in the Underlying Action, thereby according complete relief between BDI and First Mercury, the only parties to the insurance contracts.

Nor do the underlying claimants have an interest in this declaratory judgment action at this time.  The underlying claimants in the Florida litigation are not in privity with First Mercury and,

8

therefore, have no rights to claim entitlement under the Policies at this stage.  *See Steen v. Aetna Cas. & Sur. Co.*, 401 P.2d 254, 255 (Colo. 1965).  Indeed, third parties, such as the underlying claimants, are strangers to the contract at issue and must first obtain a judgment and/or assignment before they can seek entitlement to insurance proceeds.  *See Colard v. American Family Mut. Ins. Co.*, 709 P.2d 11, 14-15 (Colo. App. 1985).   The fact that third parties lack privity with an insurance carrier and must obtain an assignment is the reason why assignments of this type were approved by the Colorado Supreme Court in the first place.  *See Northland Ins. Co. v. Bashor*, 494 P.2d 1292, 1294 (Colo. 1972); *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010) (internal citation omitted) ("Although referred to as 'third-party bad faith,' the insurer's duty of good faith and fair dealing extends only to its insured, not the third party.  Therefore, the insured must make a formal assignment of its bad faith claims to the third party before the third party can assert such a claim directly against the insurer.").

Accordingly, the claimants' interest in this case is only hypothetical.  They do not have standing to pursue First Mercury unless and until they: 1) obtain a judgment against the insured, and that judgment is uncollectible; or 2) the insured has agreed to an assignment, whereby the claimants can seek to recover an agreed judgment against First Mercury.  In fact, to establish an interest in the First Mercury Policies, the underlying claimants would have to demonstrate that they would be able to recover more than the limits that have already been tendered by BDI's professional liability carrier before they may claim potential entitlement to the First Mercury Policies.  Courts have consistently held that this kind of inchoate financial interest in an insurance policy is not enough to make a party "necessary" under Rule 19 to a declaratory judgment action between an insured and its insurer.  *See, e.g. Coregis Ins. Co. v. Wheeler*, 180 F.R.D. 280, 282-83

(E.D. Pa. 1998) (finding that underlying claimant Wendler, as third-party plaintiff who brought suit against policyholder, was not necessary party to insurer's action seeking a declaration of no coverage under professional liability policy because claimant's interest was merely hypothetical financial interest in policy it was not a party to).

Instead of analyzing the relevant Rule 19 factors in the context of this case, Defendant cites *United Fin. Cas. Co. v. Lapp*, 2012 WL 7800838 (D. Colo. Oct. 12, 2012), an unpublished decision which addressed the issue of dismissing a declaratory judgment complaint for lack of subject matter jurisdiction under 12(b)(1). In that case, the Court dismissed the insurer's declaratory judgment action for lack of subject matter jurisdiction because the insurer failed to identify the citizenship of the John Doe defendants it named in its complaint. *Id.* at *6. However, the issue in this case is the claimed indispensable nature of the underlying third-party tort plaintiffs to this declaratory judgment action, and not an issue of determining subject matter jurisdiction. Respectfully, the conclusions contained in *Lapp* and the evaluation of the issues made by another division of the Court in that case are inapplicable to the present matter and legally distinguishable.

Applying the foregoing standards and authorities to the facts of this case, it is apparent that the underlying claimants are not necessary parties to this declaratory judgment action and, therefore, BDI's Motion to Dismiss must be denied.

1.  **If the Court concludes that the underlying claimants are necessary, the Court should not dismiss this action, but should join the underlying claimants.**

As discussed above, no factual or legal basis warrants a determination that the underlying claimants are "necessary" to this contract action. However, in the event that this Court concludes that the parties are "necessary" under Rule 19(a), which First Mercury disputes, there still remains

no basis to dismiss this action.  Dismissal for failure to join a party will only occur where that party's joinder is not feasible and that party is indispensable.  *See Rishell,* 94 F.3d at 1411-12; *see also Francis Oil & Gas, Inc. v. Exxon Corp.*, 661 F.2d 873, 877 (10th Cir. 1981) ("If the disposition of the action in the absence of non-joined parties may impair or impede their ability to protect that interest or leave any of the persons already parties subject to the risk of incurring double, multiple or otherwise inconsistent obligations, they should be joined if it is feasible to join them.").  As the moving party, BDI has the burden of persuasion in arguing for dismissal.  *Rishell* at 1411.  BDI has not addressed the standards which apply to determining whether any party is indispensable.  It also has not provided this Court with any basis to conclude that the underlying claimants cannot be joined to this Action.  BDI has, therefore, failed to sustain its burden.  Consequently, even if the Court finds the underlying claimants to be "necessary," dismissal is not warranted but, rather, the Court may join the underlying claimants to this Action as set forth in Rule 19(a)(2).

> **2.**    **Requiring First Mercury to name all of the underlying claimants, known and unknown, in this Action would be inefficient and disruptive to this litigation.**

Notably, the statute of limitations for personal injury actions in Florida is four years.  *See* Fla. Stat. 95.11(3)(a).  The bridge collapse occurred on March 15, 2018 and, thus, a potential claimant has until March 15, 2022 to commence an action for any alleged injuries sustained as a result of the bridge collapse.  Requiring First Mercury to name each of the underlying claimants in this Action would result in an unknown number of amendments to the Complaint that would not only be inefficient but also disruptive to this litigation, which again involves only a contract dispute between First Mercury and BDI.

Based on the foregoing, it is evident that the underlying claimants are not necessary parties to the instant Action pursuant to Rule 19(a). Even if they were, which First Mercury denies, Rule 19(a)(2) mandates that the Court join such necessary parties by issuance of an Order requiring same. Thus, Rule 19(a) provides a mechanism upon which necessary parties may be joined to an action without requiring dismissal of same. In any event, BDI's motion must be denied as the underlying claimants are not necessary and indispensable parties to this Action.

**B.     Defendant's Second Basis For Dismissal Is Meritless.**

     **1.   This Court should exercise its discretion to hear this action.**

BDI's urges this Court to decline to exercise its discretion to decide this declaratory judgment action under Colorado Supreme Court precedent because it claims that the issues in this Action are interdependent with and inseparable from the liability issues in the Underlying Action. However, a simple review of the Professional Services Exclusion contained in the First Mercury Policies, along with consideration of the services provided by BDI with respect to the bridge project, establish that the issues here are not interdependent with and inseparable from the liability issues in the Underlying Action.

As an initial matter, federal law governs the issue of whether a federal court sitting in diversity should hear or dismiss a case based on the Declaratory Judgment Act. *See Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978); *Western Cas. and Surety Co. v. Teel*, 391 F.2d 764, 766 (10th Cir. 1968). While the federal courts have discretion to decide whether to issue a declaratory judgment, they have repeatedly confirmed that early resolution of coverage suits through judicial declaration of an insurer's obligations is preferable, so that both the insured and insurer may be free from uncertainty. *See Cont'l Cas. Co. v. Coastal Savings*

*Bank*, 977 F.2d 734, 738 (2d Cir. 1992), citing *ACand S, Inc. v. Aetna Cas. and Surety Co.*, 666 F.

2d 819, 823 (3d. Cir. 1981); *see also State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 (10th

Cir. 1994) ("[T]here is a substantial interest in deciding [coverage] issues without undue delay,

particularly the question of the duty to defend."); *Horace Mann Ins. Co. v. Johnson By and

Through Johnson*, 953 F. 2d 575, 579 (10th Cir. 1991) (quoting *Farmers Alliance Mut. Ins. Co. v.

Jones*, 570 F. 2d at 1386) ("'Declaratory judgment actions are seen as useful in actions wherein

insurance companies seek to have their liability declared.  We have expressly recognized that one

of the primary functions of the [Federal Declaratory Judgment] Act is to provide the insuror [sic]

such a forum.'").

The Tenth Circuit has provided the following list of factors for courts to consider in

determining whether to exercise its discretion to issue a declaratory judgment:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve
> a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory
> remedy is being used merely for purpose of "procedural fencing" or "to provide an arena
> for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction
> between our federal and state courts and improperly encroach upon state jurisdiction; and
> [5] whether there is an alternative remedy which is better or more effective.

*Mhoon*, 31 F.3d at 983.  Typically, courts utilize these factors to determine whether to abstain from

a case where there are concurrently pending state and federal court proceedings involving the same

parties and the same issues.  *See United States v. City of Las Cruces*, 289 F.3d 1170, 1186-92 (10th

Cir. 2002); *St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169-70 (10th Cir. 1995).

That is not the case here.

An analysis of the five *Mhoon* factors in this case shows that this Court should exercise

its jurisdiction to hear this Action.  Specifically, the first two factors, whether the action would

settle the controversy and whether the action would serve a useful purpose, were designed "to

examine the identity of the parties and the issues in the concurrent proceedings, and examine whether there is a degree of similarity." *Bd. Of Cnty. Comm'rs of Boulder v. Rocky Mtn. Christian Church*, 481 F. Supp. 2d 1181, 1187 (D. Colo. 2007) (citing *United States v. City of Las Cruces*, 289 F.3d at 1183).  In addition, declaratory actions resolving coverage issues are held to serve a useful purpose when an action "support[s] an expeditious determination of an insurer's liability under a particular policy." *Addison Ins. Co. v. Rippy*, 2009 WL 723322 at *5 (D. Colo. March 18, 2009).  Here, a declaratory judgment would settle the controversy over insurance coverage, which is not at issue in the Underlying Action, and this Action would simply determine First Mercury's obligations, if any, under the Policies.

Moreover, this declaratory judgment action was not brought to gain a procedural advantage.  In order to find that a lawsuit was filed to gain a procedural advantage, a court must have evidence of such behavior.  *See Runyon*, 53 F. 3d at 1170 (an insurer filed a day before the insured, where the insurer knew the insured would file, and waited three years to bring this action).  BDI does not introduce any evidence to establish that First Mercury improperly filed this suit to gain a procedural advantage.  Additionally, there is no "race to *res judicata*."  No judgment in this case would be binding in the underlying case, or vice versa, as the issues in the two cases are not the same.

This Action also creates no friction between the federal and state courts because there is no concurrently pending state court action.  None of the allegations in the Underlying Action involve insurance coverage.  First Mercury is not a party in the Underlying Action.  The Florida state court is not being asked to rule on issues of insurance coverage, but rather on the liability of parties that were involved in building, constructing, designing and overseeing the construction of

the bridge that collapsed.  *See Mhoon* at 984 ("Neither party before us has suggested that State Farm was, or could have been made, a party to the state tort action, thus obviating any need for an independent declaratory action and providing a simpler and more efficient resolution of State Farm's obligations toward Mhoon.").

For this same reason, there is likewise no alternative remedy which is better or more effective than First Mercury's declaratory judgment action to decide the rights among the parties to this action.  The fifth factor considered by courts looks to whether there is an alternative proceeding that would resolve the controversy.  *See Rocky Mountain Christian Church*, 481 F. Supp. 2d at 1188-89.  Again, there is not.  First Mercury brought this declaratory judgment action in Colorado federal district court, an available forum for First Mercury to seek a declaration as to its duties under the First Mercury Policies which were issued to BDI in Colorado.  The only other forum currently available, which is the underlying state tort litigation in Florida, does not involve claims relevant to this legal analysis, nor is it a proper forum for First Mercury to litigate insurance coverage pursuant to a contract it issued in Colorado to a Colorado corporation.  *See* 28 U.S.C. § 1391(b) and (c).

**2.      The issues in this Declaratory Judgment Action are "independent of and separable from" the issues in the Underlying Action.**

The Defendant cites Federal district court cases from Colorado in which the courts looked to a Colorado Supreme Court case for additional guidance on the issue of when to dismiss or stay a declaratory judgment action.   In *Constitution Associates v. New Hampshire Ins. Co.*, 930 P.2d 556 (Colo. 1996), the Colorado Supreme Court held that an anticipatory declaratory judgment must be "independent of and separable from the underlying action." *Id.* at 561.   Contrary to

Defendant's assertion, the issues in this Action are "independent of and separable from" the Underlying Action.

The question before this Court is whether the Policies' Professional Services Exclusion would bar coverage for BDI. In the Underlying Action, whether BDI was providing "professional services" is not relevant to the determination of whether BDI acted negligently or not. The state court issue is whether BDI was negligent in its performance of its duties under a contract, not whether those services came within the insurance policy definition of "professional services." *See Amco Ins. Co. v. Chin*, 2010 WL 11597422, at *8-9 (C.D. Cal. March 15, 2010) (denying defendants motion to stay declaratory judgment action because the issues in the underlying state court action did not overlap with the issues in the coverage action, where the coverage action involved issues of contractual interpretation, including interpretation of professional services exclusion, and underlying action involved issue of liability).

The Court's decision whether BDI was rendering "professional services" within the meaning of the First Mercury Policies will not affect the state court's resolution of whether BDI was negligent. Similarly, a decision in the Underlying Action as to whether BDI was negligent would not affect this Court's coverage determination.

BDI claims that it will be forced to argue that "its actions constitute something other than professional negligence" in order to secure coverage under the Policies. *See* Motion to Dismiss, Doc 9, p. 8. That is simply not the case. As explained above, BDI will not have to make any showing of whether it was negligent, professional or otherwise. Rather, this Court will be tasked with determining whether BDI's work falls under "professional services" as that term is defined under the Policies. Thus, in its defense of this Action, BDI must simply show that its work or the

16

services rendered in connection with the bridge project do not fall within the enumerated tasks that are defined as "professional services" under the First Mercury Policies.

This is case of contractual interpretation and there is no overlap between the issues in this Action and the Underlying Action. Defendant has failed to show that the issues in this declaratory judgment action are not independent of and separable from the issues involved in the Underlying Action. Rather, it is clear that the issues in the two cases are separable and there is no risk of prejudice to BDI if it were required to defend this action and the Underlying Action. As such, BDI's Motion must be denied.

## IV.    CONCLUSION

Based on the foregoing, the Plaintiff, First Mercury Insurance Company, respectfully requests this Court enter an Order denying Defendant's Motion to Dismiss in its entirety.

Respectfully submitted this 12th day of March, 2019.

> *s/ Jeremy L. Swift*
> Jeremy L. Swift
> TREECE ALFREY MUSAT P.C.
> 633 17th Street, Suite 2200
> Denver, Colorado 80202
> Phone: (303) 292-2700
> Fax: (303) 295-0414
> jswift@tamlegal.com
>
> Kristin V. Gallagher
> Joanna L. Young
> KENNEDYS CMK LLP
> 570 Lexington Avenue, 8th Floor
> New York, New York 10022
> Phone: (646) 625-4000
> Fax: (646) 625-4044
> kristin.gallagher@kennedyscmk.com
> joanna.young@kennedyscmk.com
> Attorneys for Plaintiff
> First Mercury Insurance Company

17

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 12th day of March, 2019, the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** was electronically filed with the Court via CM/ECF, which will send electronic notification to the following:

Christopher R. Mosely, Esq.
Sherman & Howard L.L.C.
cmosley@shermanhoward.com
*Attorneys for Defendant*
*Bridge Diagnostics, Inc.*

*s/ Jeremy L. Swift*

_____